IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| BILAL AHROUCH, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:25-cv-02535-SHL-cgc |
| | ) |
| SALOUA BOULAKHRIF, | ) |
| Respondent. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**

Petitioner Bilal Ahrouch filed a verified petition seeking the return of his children to Germany under the International Child Abduction Remedies Act.[1] (See generally ECF No. 11.) He now requests an ex parte temporary restraining order enjoining Respondent Saloua Boulakhrif from removing his children from this district pending a determination on the merits of his petition, among other things. (See generally ECF No. 8.) Because the TRO factors weigh in favor of Ahrouch's request, his motion is **GRANTED IN PART**. But because some of the relief he seeks is not necessary here, it is also **DENIED IN PART**.

---

[1] The Court has jurisdiction to decide the merits of the wrongful removal claim because the children are located in the Western District of Tennessee, but it cannot address the merits of any underlying custody dispute, which must be decided by a German court. See 22 U.S.C. § 9001(b); Friedrich v. Friedrich, 983 F.2d 1396, 1400 (6th Cir. 1993) ("Friedrich I") (citing Hague Convention, Art. 19).

## BACKGROUND[2]

Ahrouch and Boulakhrif got married on August 11, 2015.[3] (ECF No. 11 at ¶ 9.) They had four children together: S.A., A.A., A.A., and N.A.A., who are eight years old, seven years old, six years old, and one year old, respectively. (Id. at ¶ 1, 8–9.) The children were born in Dortmund, Germany. (Id. at ¶ 8.) The parties lived in Germany together until Boulakhrif filed for divorce in May 2023. (Id. at ¶ 10.) Because German law requires that spouses separate for at least one year prior to divorce, Ahrouch moved into his own apartment. (Id. at ¶ 11.) He continued to actively and regularly visit his children despite the separation. (Id.)

In March 2024, Ahrouch discovered that Boulakhrif fled Germany and took their children without his consent. (Id. at ¶ 12.) She traveled to Morocco, where she also filed for divorce. (Id. at ¶ 14.) As a result, Ahrouch went to Morocco to petition the courts for the return of his children. (Id.) When Boulakhrif discovered that Ahrouch followed her to Morocco, she again removed the children from the country and fled—this time, to Paris, France. (Id. at ¶ 15.)

Boulakhrif's brother informed Ahrouch that she may have traveled from France to the United States to live with her sister, Jamila Carvelli, and her brother-in-law, Chris Carvelli, in Collierville, Tennessee. (Id. at ¶ 16.) Ahrouch believes that the children may be living at 1707 Totty Lane, Collierville, Tennessee 38017. (Id. at ¶ 17.) He asserts that Boulakhrif wrongfully removed their children from Germany and has wrongfully retained them in a foreign jurisdiction since they first fled in March 2024. (Id. at ¶ 19.) He requests an ex parte TRO enjoining Boulakhrif from fleeing with them once again, so that he can litigate the merits of his petition to

---

[2] The facts are taken from the verified petition and are accepted as true for purposes of this motion.
[3] The TRO motion states that the parties were married on August 11, 2025. (ECF No. 8 at ¶ 2.) Because that would be impossible, the Court uses the date from the verified petition and will consider the date in the motion a typographical error.

return them to Germany.  The Court agrees that an ex parte TRO is necessary under these circumstances.

## APPLICABLE LAW

An ex parte TRO is an extraordinary and drastic remedy designed to preserve the status quo until the court can hold a hearing.  Proctor & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 226 (6th Cir. 1996).  The court may only issue a TRO after considering whether (1) the petitioner is likely to succeed on the merits of his claims, (2) the petitioner will suffer irreparable injury without a TRO, (3) the TRO would cause substantial harm to others, and (4) the TRO would serve the public interest.  McPherson v. Mich. High Sch. Athletic Ass'n, Inc., 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting Sandison v. Mich. High Sch. Athletic Ass'n, Inc., 64 F.3d 1026, 1029 (6th Cir. 1995)).

No factor is dispositive—they are "interrelated considerations that must be balanced together." Stein v. Thomas, 672 F. App'x 565, 569 (6th Cir. 2016) (quoting Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991)).  For example, if the risk of irreparable harm to the petitioner is high, he is not required to make as strong of a showing that he is likely to succeed on the merits.  Id. (quoting Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006) (stating that "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay")).

When a petitioner seeks a TRO without giving notice to the other party, he must also satisfy two additional procedural conditions.  Fed. R. Civ. P. 65(b)(1).  First, he must include specific facts in an affidavit or verified complaint that "clearly show that immediate and irreparable injury, loss, or damage will result" before the adverse party can be heard in opposition.  Fed. R. Civ. P. 65(b)(1)(A).  Second, the petitioner's attorney must certify in writing

"any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). An ex parte TRO is "only appropriate where the applicant would face irreparable harm so immediate that it would be improper to wait until after a preliminary injunction hearing to enjoin the non-movant's conduct." Erard v. Johnson, 905 F. Supp. 2d 782, 791 (E.D. Mich. 2012) (citing Bronco Wine Co. v. U.S. Dept. of Treasury, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996)).

The "stringent restrictions" on ex parte TROs "reflect the fact that our entire jurisprudence runs counter to the notice of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 438–39 (1974). But ex parte TROs are "no doubt necessary in certain circumstances." Id. at 439. Those circumstances are present here.

## ANALYSIS

Ahrouch seeks an ex parte TRO (1) preventing Boulakhrif from leaving this district with their children, (2) directing Boulakhrif to surrender her passport and the children's passports, (3) ordering Boulakhrif to allow Ahrouch to speak with his children, and (4) requiring Boulakhrif to pay for all costs and fees incurred to date by reason of the wrongful removal. (ECF No. 8 at PageID 16.) The Court agrees that the TRO factors weigh in favor of granting most of the relief he seeks.

Ahrouch's verified petition establishes that he is likely to succeed on the merits of his claim under ICARA. To succeed on this claim, he must prove that his children were wrongfully removed from Germany as strictly defined by the Hague Convention on the Civil Aspects of International Child Abduction. See 22 U.S.C. § 9003(e)(1)(A); see also Abrego v. Guerra, No. 2:23-cv-02515-MSN-cgc, 2023 WL 12073306, at *2 (W.D. Tenn. Sept. 12, 2023). The Hague

4

Convention is designed to "protect children internationally from the harmful effects of their wrongful removal" and "to establish procedures to ensure their prompt return to the State of their habitual residence." Friedrich I, 983 F.2d at 1400 (quoting Hague Convention Preamble). Removal is wrongful under the Hague Convention if Ahrouch was or otherwise would have been exercising his custody rights to his children under German law at the time of removal in March 2024. Friedrich v. Friedrich, 78 F.3d 1060, 1064 (6th Cir. 1996) ("Friedrich II") (citing Hague Convention, Art. 3). He must prove the exercise of his custody rights by a preponderance of the evidence. Id. Both Germany and the United States are signatories to the Hague Convention. Friedrich I, 983 F.2d at 1400.

Here, Ahrouch alleges that the children were born in Germany, they were living in Germany until Boulakhrif removed them, and he intended for them to remain in Germany. He swears in his verified petition that he is their biological father, he is still married to Boulakhrif, and, at the time of removal, he had rights of custody under German law, which affords both parties joint custody, and he continues to have those rights. Finally, he alleges that removal of his children from Germany violated his custody rights and therefore German law, which would qualify as wrongful removal under the Hague Convention. Based on these allegations, Ahrouch is likely to succeed on the merits of his claim.

Ahrouch is also likely to suffer substantial and irreparable harm without a TRO. Boulakhrif is a substantial flight risk. Ahrouch asserts that she and their children are illegal immigrants in the United States, she wrongfully removed the children from Germany, and she has already absconded with the children to two other countries, including Morocco and France. This is the third country to which she has fled, and he argues that, without a TRO, it will not be the last. The Court agrees that Boulakhrif's risk of fleeing once again poses a substantial risk that Ahrouch will suffer immediate and irreparable harm without a TRO to prevent her from

doing so.  See Abrego, 2023 WL 12073306, at *2–3 (finding a risk of substantial and irreparable injury under similar circumstances).

    Finally, a TRO would prevent substantial harm to others by preserving the status quo, and it will benefit the public interest by effectuating the remedy authorized by ICARA.  The children currently live in this district and keeping them here will prevent them from suffering any more harm caused by their wrongful removal.  It would also impose a minimal burden on Boulakhrif—she merely needs to stay in the place she has chosen to go.  ICARA explicitly authorizes remedies like this "to protect the well-being of the child involved" and "to prevent the child's further removal or concealment before final disposition of the petition."  See 22 U.S.C. § 9004(a).  A TRO would be in the public interest because it would give life to ICARA's provision allowing the Court to act in the best interest of the children here.

    Ahrouch has also satisfied the requirements necessary to issue the TRO ex parte.  He submitted a verified petition in which he swore under penalty of perjury that he would suffer immediate and irreparable harm before Boulakhrif could be heard in opposition.  If the Court waited to hear from her, she might abscond for a fourth time, and Ahrouch would have to start over once again.  This is his second time petitioning a court to obtain his children—he first did so in Morocco and, once Boulakhrif learned of his attempt to retrieve them, she fled.  He asserts that she will do so again if she learns of this action before a TRO is issued.  His counsel also submitted an affidavit explaining that notice should not be required here for those same reasons.

    Thus, Ahrouch has satisfied the procedural requirements necessary to obtain an ex parte TRO, and the factors weigh in favor of enjoining Boulakhrif from leaving this district with the children and requiring her to surrender the children's passports to prevent them from traveling internationally.  This limited TRO would preserve the status quo.  However, a TRO requiring Boulakhrif to allow Ahrouch to speak to the children would not preserve the status quo because

he is not currently able to communicate with them. And forcing Boulakhrif to surrender her own passport is not necessary.

## CONCLUSION

Ahrouch's motion for an ex parte TRO is **GRANTED IN PART** to the extent that Boulakhrif is **ENJOINED** from leaving this district with the children and must surrender the children's passports. Although the remedy sought is extraordinary, the Court is satisfied that it is necessary here to temporarily preserve the status quo until it can decide the merits of this claim. But his motion is **DENIED IN PART WITHOUT PREJUDICE** to the extent that Boulakhrif need not surrender her own passport at this time, and the Court will further assess his request to order Boulakhrif to allow him to speak to the children when the parties convene for a status conference on May 30, 2025, as described below. His request for attorneys' fees is also **DENIED WITHOUT PREJUDICE**.

It is therefore **ORDERED** that:

1. Boulakhrif, her agents, and any person acting in concert with her **SHALL NOT** take any action to remove S.A., A.A., A.A., and N.A.A. from the Western District of Tennessee.

2. Boulakhrif **SHALL** appear before this Court on **May 30, 2025, at 9:00 a.m.** in Courtroom 1 of the United States District Court for the Western District of Tennessee at 167 North Main Street, Memphis, Tennessee 38103. Boulakhrif **SHALL** appear with the children, S.A., A.A., A.A., and N.A.A., and with their passports, for an initial hearing to set a date for an expedited hearing on the merits of the verified petition. Boulakhrif may appear with or without counsel. If Ahrouch is in Germany, he may appear via Microsoft Teams; his counsel must appear in person.

3. If Boulakhrif fails to appear on May 30 with the children and with their passports, or if she removes the children from this district in contravention of this TRO, the Court **SHALL**

issue an arrest warrant for her arrest and her appearance at a contempt hearing to be set by the Court.

4. Ahrouch **SHALL** serve a copy of this order, a certified translated copy of this order, a copy of the verified petition, and a certified translated copy of the verified petition, together with all of the attachments and all other filings, on Boulakhrif by private process on or before **May 27, 2025**.

5. Absent further extension by this Court, this order **SHALL** expire on June 6, 2025, at 3:45 p.m.

**IT IS SO ORDERED** this 23rd day of May, 2025, at 3:45 p.m.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
CHIEF UNITED STATES DISTRICT JUDGE